1  Robert W. Freeman, Jr., Esq.
Nevada Bar No.  003062
2  LEWIS BRISBOIS BISGAARD & SMITH
6385 S. Rainbow Blvd., Suite 600
3  Las Vegas, Nevada 89118
(702) 893-3789
4  Attorneys for Defendants
North Las Vegas Police Department, North Las Vegas,
5  Lieutenant Michael Blackwell, Officer Shayne Skipworth,
Officer Jake Hickman, Officer Gary Nellis, Officer Jose Garcia,
6  and Sergeant George Middlebrook

7  **UNITED STATES DISTRICT COURT**

8  **STATE OF NEVADA**

9  * * * * *

10  PHYLISS HUFF,                                    Case No.: 2:10-cv-1394-PMP-GWF

11                              Plaintiff,           **NOTICE OF INTERLOCUTORY
                                                      APPEAL**
12  vs.

13  NORTH LAS VEGAS POLICE DEPARTMENT, a
political subdivision of the State of Nevada;
14  NORTH LAS VEGAS, a political subdivision of
the State of Nevada; CHIEF OF POLICE
15  JOSEPH FORTI, individually and in his
capacity as Chief of Police of the North Las
16  Vegas Police Department; MICHAEL
BLACKWELL, individually and in his official
17  capacity as a Lieutenant with the North Las
Vegas Police Department; SHAYNE
18  SKIPWORTH, individually and in his official
capacity as a North Las Vegas Police Officer;
19  JAKE HICKMAN, individually and in his
official capacity as a North Las Vegas Police
20  Officer; GARY NELLIS, individually and in his
official capacity as a North Las Vegas Police
21  Officer; INVESTIGATOR GARCIA, individually
and in his official capacity as a North Las
22  Vegas Police Officer; GEORGE
MIDDLEBROOK, individually and in his
23  official capacity as a sergeant employed by
the North Las Vegas Police Department;
24  JOHN DOES I though XX, inclusive

25                              Defendants.

26  _____

27

28

1

## NOTICE OF INTERLOCUTORY APPEAL

2      NOTICE IS HEREBY GIVEN that Defendants, CHIEF OF POLICE JOSEPH FORTI,

3  individually and in his capacity as Chief of Police of the North Las Vegas Police Department,

4  MICHAEL BLACKWELL, individually and in his official capacity as a Lieutenant with the

5  North Las Vegas Police Department; SHAYNE SKIPWORTH, individually and in his official

6  capacity as a North Las Vegas Police Officer; JAKE HICKMAN, individually and in his official

7  capacity as a North Las Vegas Police Officer; GARY NELLIS, individually and in his official

8  capacity as a North Las Vegas Police Officer; INVESTIGATOR GARCIA, individually and in

9  his official capacity as a North Las Vegas Police Officer; GEORGE MIDDLEBROOK,

10 individually and in his official capacity as a sergeant employed by the North Las Vegas

11 Police Department, do appeal to the United States Court of Appeals for the Ninth Circuit

12 from the Order of the district court entered and filed on December 23, 2013, denying

13 Defendants' Motion for Summary Judgment [85].

14      Dated this 16 day of January, 2014.

15                                         LEWIS BRISBOIS BISGAARD & SMITH

16

17                                         Robert W. Freeman, Jr., Esq.
                                           Nevada Bar No. 003062
18                                         6385 S. Rainbow Blvd., Suite 600
                                           Las Vegas, Nevada 89118
19                                         (702) 893-3789
                                           Attorneys for Defendants

20

21

22

23

24

25

26

27

28
                                           Page 2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the $\underline{16}$ day of January, 2014, pursuant to Special Order #109, I caused the **NOTICE OF INTERLOCUTORY APPEAL** to be filed electronically with the Clerk of the Court through Case Management/Electronic Filing System.  Pursuant to Local Rule 5-4, "[t]ransmission of Notice of Electronic Filing ("ECF") constitutes service of the filed documents" upon the following (to the extent registered as an electronic case filing user with the Clerk):

Cal J. Potter, III, Esq.
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

_____
Employee of LEWIS BRISBOIS
BISGAARD & SMITH

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

PHYLLIS HUFF,

        Plaintiff,

v.

NORTH LAS VEGAS POLICE
DEPARTMENT; OFFICER GARCIA;
JOSEPH FORTI; MICHAEL
BLACKWELL; SHAYNE SKIPWORTH;
JAKE HICKMAN; GARY NELLIS;
GEORGE MIDDLEBROOK; and CITY
OF NORTH LAS VEGAS,

        Defendants.

2:10-CV-01394-PMP-GWF

ORDER

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. #67), filed on April 29, 2013. Plaintiff filed an Opposition (Doc. #82) on August 5, 2013. Defendants filed a Reply (Doc. #83) on August 22, 2013.

**I. BACKGROUND**

This is an excessive force and unreasonable detention case against several officers of the North Las Vegas Police Department ("NLVPD") arising out of Defendants' traffic stop of Plaintiff Phyllis Huff. Plaintiff brings claims under 42 U.S.C. § 1983 against Defendants Jake Hickman ("Hickman"), Shayne Skipworth ("Skipworth"), Gary Nellis ("Nellis"), Jose Garcia ("Garcia"), Michael Blackwell ("Blackwell"), and George Middlebrook ("Middlebrook"). (Am. Compl. (Doc. #30).) Plaintiff also asserts claims against Defendant City of North Las Vegas ("City") and its Chief of Police, Defendant Joseph Forti ("Forti"), for failure to train and supervise NLVPD police officers, and for ratifying excessive force by NLVPD officers. (Id.) Finally, Plaintiff brings state law claims for battery and intentional infliction of emotional distress. (Id.)

On August 22, 2008, Defendants Hickman, Skipworth, Nellis, Garcia, Blackwell, and Middlebrook were conducting a narcotics investigation related to the residence at 8704 Azure Sky, which was the home of suspected narcotics trafficker Devon Bradly. (Defs.' Mot. Summ. J. ["Defs.' MSJ"], Ex. A, Ex. B at 11, Ex. G at 16-17.) Prior to the incident with Plaintiff, Defendants stopped two other vehicles that left the residence. (Defs.' MSJ, Ex. A.) In one of the vehicles, police discovered over 3,000 ecstacy tablets in the possession of a narcotics trafficker whom the undercover officers had contacted earlier to request 3,000 ecstasy tablets. (Id.; Defs.' MSJ, Ex. B at 7-8.) The second vehicle failed to stop for police and drove erratically. (Defs.' MSJ, Ex. A.) The passenger in the vehicle was Devon Bradly, who was arrested for conspiracy to violate the Controlled Substances Act based on the earlier seizure of the ecstasy tablets. (Id.) The driver of the second vehicle was taken to the hospital after complaining of medical issues related to his diabetes, and Defendant Blackwell accompanied him to the hospital. (Id.)

At approximately 9:30 p.m., a green sedan, which had been parked at the residence when the officers began surveillance on the day in question, left the residence. (Defs.' MSJ, Ex. A, Ex. C at 11.) This vehicle was driven by Plaintiff. The parties differ over what happened next.

According to the officers, as the green vehicle approached where Defendant Hickman was parked alongside the curb, Hickman rolled down his window, waved to the driver, identified himself as a police officer, presented his badge, and asked to speak to the driver. (Defs.' MSJ, Ex. C at 12-13.) Hickman was not wearing a uniform and was in an unmarked Ford truck. (Id.) The driver of the green sedan drove away. (Id. at 14.) Hickman denies that he had any further involvement with stopping the green sedan. (Id. at 15.)

Defendant Garcia was stationed outside the housing development in which the Azure Sky residence was located. (Defs.' MSJ, Ex. D at 15.) Garcia was driving an

1   unmarked Nissan Pathfinder and he was not wearing a police uniform. (Id. at 15-16, 30.)

2   According to Garcia, he exited his vehicle and raised up his hand to get the driver of the

3   green sedan to stop, but the driver did not stop. (Id. at 14, 38.) According to Garcia, he was

4   not further involved in stopping the green sedan and he arrived on the scene after the driver

5   already had been stopped and placed in handcuffs. (Id. at 21, 23.)

6       Defendant Skipworth observed the driver "accelerate[] and drive[] erratically out

7   of the complex," and the driver did not stop until pulled over by Defendant Nellis, who had

8   activated the emergency lights on his car. (Defs.' MSJ, Ex. A, Ex. B at 24, Ex. E at 17.)

9   According to Skipworth and Nellis, the driver, who turned out to be Plaintiff, exited the

10  vehicle and then got back into the car and closed the door. (Defs.' MSJ, Ex. A, Ex. B at 9,

11  Ex. E at 21.) Nellis and Skipworth ran up to the car. (Defs.' MSJ, Ex. E at 21.) The driver

12  side window was down, and Skipworth "reached in, [and] stopped [Plaintiff] from putting

13  the car in gear." (Defs.' MSJ, Ex. B at 9.) According to Nellis, Skipworth "controlled

14  [Plaintiff] by grabbing her wrist." (Defs.' MSJ, Ex. E at 23.) Nellis and Skipworth

15  "maneuver[ed] her out of the vehicle," Nellis put her in handcuffs, and escorted her to the

16  front of a police vehicle. (Defs.' MSJ, Ex. A, Ex. B at 22-23, Ex. E at 27.) Plaintiff did not

17  resist. (Defs.' MSJ, Ex. E at 28.) Defendants deny that Plaintiff was physically abused.

18  (Defs.' MSJ, Ex. B at 22, 31, Ex. E at 30, Ex. G at 38.) Defendants deny they observed any

19  injuries on Plaintiff or that Plaintiff complained of any injuries. (Defs.' MSJ, Ex. D at 31,

20  Ex. G at 38-39.) At some point, Nellis put an extra set of handcuffs on Plaintiff to widen

21  the distance between her wrists to make it more comfortable. (Defs.' MSJ, Ex. B at 32-33,

22  Ex. E at 28-29.)

23      The officers transported Plaintiff to the Azure Sky residence. (Defs.' MSJ, Ex. B

24  at 9.) Officers secured a warrant for the residence, and the search revealed marijuana,

25  ecstacy, cocaine, and drug-related paraphernalia. (Id.) Plaintiff was detained while the

26  officers searched the house and attempted to determine if she had any connection to the

narcotics in the house. (Defs.' MSJ, Ex. B at 33, 35.) Following the search, Plaintiff was released and no charges were filed against her because there was no probable cause to connect her with the drugs in the home. (Defs.' MSJ, Ex. B at 9, 33.)

According to Plaintiff, she left the Azure Sky residence after doing her laundry there. (Defs.' MSJ, Ex. I at 46.) As she left the residence, she saw a man waving at her who asked to speak with her. (Id. at 39-40.) She denies that the man identified himself as a police officer or that he displayed a badge. (Id.) She believed he was flirting with her, and she advised him she was not interested, and drove away. (Id. at 53-54, 57-58.) She noticed the man started following her in his truck, and she became afraid. (Id.) Not long after she drove out of the housing area, she pulled over after a police car activated its lights. (Id. at 60.) She did not recall exiting her vehicle and getting back in as described by Skipworth and Nellis, but she does not deny that could have happened. (Id. at 62-63.)

According to Plaintiff, four or five officers approached her vehicle, someone punched her in the head twice, and she was forcefully removed from the vehicle by someone grabbing her left arm. (Id. at 63-64, 70.) She was then "charged" toward an officer's truck and slammed into the truck three times. (Id. at 63, 69, 71-74.) The officers were yelling profanities at her, saying things such as "you think you were going to get away from us, you fucking bitch . . . [t]his is what a fucking runner gets, you motherfucker." (Id. at 67.) She was then searched by male officers under her shirt and pants. (Id. at 82-84.) The officers then placed her in a patrol car for approximately two or three hours while they searched her vehicle. (Id. at 77.) She was then taken to the Azure Sky residence for approximately two more hours while the officers searched the house. (Id. at 78-79.) She was not released until 2:30 a.m. (Id. at 79.) She denies her handcuffs were ever loosened despite her multiple requests. (Id. at 63, 74, 80.)

Plaintiff states she suffered pain to her shoulders, back, upper lip, and left ankle, as well as damage to a dental bridge from the incident. (Id. 87-89.) That night, she took

4

1   some Tylenol and went to bed because she had to get up for work in a few hours. (Id. at

2   91.) Plaintiff could not complete her shift at work, went home, took more medicine, and

3   went to bed. (Id. at 91-92.) Her nephew told her she should see a doctor, but she stated she

4   was too scared because the hospital might call the police. (Id. at 92.) Two days later, her

5   nephew went with her to Mountain View Hospital. (Id. at 92-93.) At the hospital, Plaintiff

6   complained of back and neck pain, and a headache. (Defs.' MSJ, Ex. J.) The hospital

7   record does not reflect that Plaintiff complained about pain related to her ankle. (Id. at 8.)

8   The treating physician diagnosed "contusion, neck pain, and back pain," as well as a mild

9   headache. (Id. at 9, 12.) The contusions were on Plaintiff's left arm. (Id.) The treating

10  physician did not note any "obvious external trauma" to Plaintiff's head. (Id. at 10.) The

11  treating physician also did not observe any injury to Plaintiff's mouth, but the physician

12  indicated a fracture of a dental bridge might be something she would not see upon

13  examination unless the bridge was protruding. (Id. at 14, 17.) Plaintiff states she did not

14  tell the emergency room doctor about pain in her mouth, instead going to her dentist.

15  (Defs.' MSJ, Ex. I at 96.)

16      The hospital contacted the police and an officer from the Las Vegas Metropolitan

17  Police Department arrived. (Defs.' MSJ, Ex. I at 93-94, Ex. L.) After determining the

18  incident involved NLVPD officers, NLVPD lieutenant Randy Salyer ("Salyer") was

19  contacted, and he interviewed Plaintiff at the hospital. (Defs.' MSJ, Ex. L.) Salyer asked

20  Plaintiff to fill out a complaint form and requested that he be allowed to take pictures of

21  Plaintiff. (Id.) Salyer took photos, but Plaintiff did not fill out a complaint form, and

22  Salyer left the hospital. (Id.) Salyer observed marks on Plaintiff's arm and wrist, but saw

23  no other injury. (Id.)

24      Following the complaint reported to Salyer, Skipworth and Nellis spoke to their

25  supervisor, Defendant Middlebrook, about the incident. (Defs.' MSJ, Ex. B at 16, Ex. E at

26  10-11.) Hickman was not questioned by Middlebrook. (Defs.' MSJ, Ex. C at 18.) None of

the officers were questioned by an internal affairs officer regarding this incident. (Defs.'
MSJ, Ex. B at 16, Ex. D at 34, Ex. E at 10-11.) On September 24, 2008, Middlebrook sent
a memo to his supervisor, Defendant Blackwell, concluding that Plaintiff's allegations of
excessive force were unfounded. (Defs.' MSJ, Ex. H.)

A month or two after the incident, Plaintiff obtained an MRI on her ankle which
showed cysts, but it was inconclusive as to whether the condition was pre-existing, or was
caused or exacerbated by the incident with the police. (Defs.' MSJ, Ex. I at 96-97.)
According to Plaintiff, after the incident her dental plate was loose, and became more loose
over time, but she did not seek treatment from her dentist until 2010. (Id. at 98.) Plaintiff
states she still experiences pain in her neck, back, shoulder, and ankle. (Id. at 99.)

Defendants now move for summary judgment on all of Plaintiff's claims.
Defendants argue they are entitled to qualified immunity on Plaintiff's excessive force and
unreasonable detention claims because the stop was supported by reasonable suspicion,
Defendants did not use an unreasonable amount of force under the circumstances, and
Defendants reasonably detained Plaintiff while her connection to the house and the drugs
was being investigated. Defendants argue they are entitled to summary judgment on
Plaintiff's claim against the City because Plaintiff has no evidence of a policy or custom as
the moving force behind her alleged injuries, and Plaintiff has no evidence of a failure to
train amounting to deliberate indifference. Defendants also argue they are entitled to
discretionary immunity on Plaintiff's state law claims, and that these claims nevertheless
fail on the merits. Finally, Defendants argue Plaintiff has not established she is entitled to
punitive damages.

Plaintiff responds that genuine issues of fact remain regarding whether
Defendants used excessive force where Plaintiff stopped when pulled over by someone
identifiable as a police officer, did not resist, but nevertheless was punched in the face and
slammed onto the hood of a vehicle. Plaintiff also argues her detention for five hours

1   without probable cause that she had committed a crime was unreasonable. Plaintiff

2   contends Defendants are not entitled to qualified immunity because a reasonable officer

3   under the circumstances would know the force was excessive and would know they cannot

4   use force to retaliate against Plaintiff for allegedly being a "runner." Plaintiff contends a

5   reasonable officer would know the detention was unreasonable based on a Nevada statute

6   limiting detention based on reasonable suspicion to one hour.

7       As to municipal liability, Plaintiff argues NLVPD has a policy or custom of

8   violating the constitutional rights of persons they believe are attempting to flee. Plaintiff

9   also argues issues of fact remain as to whether NLVPD has a meaningful internal affairs

10  process and whether NLVPD has a policy or custom of failing to discipline officers.

11  Finally, Plaintiff argues NLVPD ratified the officers' conduct because there was no

12  meaningful investigation and no officers were punished. Finally, as to the state law claims,

13  Plaintiff argues Defendants' actions were not the kind of acts entitled to discretionary

14  immunity under Nevada law.[1]

15  ///

16  ///

17

18      [1] In their Reply, Defendants argue "Plaintiff fails to provide any points and authorities in
19  support of any claim against Defendants Joseph Forti, Michael Blackwell, Jake Hickman, Jose Garcia,
    or George Middlebrook." (Defs.' Reply in Support of Mot. for Summ. J. (Doc. #83) at 5.) However,
20  Defendants' Motion for Summary Judgment did not make arguments specific to any individual
    Defendant's liability, instead referring to all individual Defendants collectively as "Defendants" or
21  "Defendant Officers." (See, e.g., Defs.' MSJ at 15-16, 18, 24-25, 29.) Defendants did not argue in
    their initial Motion that these particular Defendants had no personal participation in the events in
22  question and could not be liable on the basis of respondeat superior. The Court will not grant summary
    judgment based on arguments Defendants raise for the first time on reply. Nevertheless, the Court
23  reminds Plaintiff of her obligations under Federal Rule of Civil Procedure 11 as it relates to
    Defendants Forti and Blackwell. None of the briefing or evidence mentions Forti as playing any role
24  in the incident, either directly or indirectly. The evidence presented also indicates Defendant
    Blackwell was at the hospital with another individual pulled over that night and had no participation
25  in stopping and detaining Plaintiff. Plaintiff therefore should consider whether she has a good faith
    basis to maintain her remaining claims against these Defendants.
26

7

## II. DISCUSSION

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). If the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

### A. Counts One and Two - Violation of Constitutional Rights

To establish liability under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983. Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling on a qualified immunity defense, a court considers whether the facts viewed in the light most favorable to the party asserting the injury show the defendant's conduct violated a constitutional right. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). If the plaintiff

8

makes this showing, the court then must determine whether that right was clearly established. Id.

A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). The court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. Wilkins, 350 F.3d at 955. The plaintiff bears the burden of showing that the right at issue was clearly established. Sorrels, 290 F.3d at 969. But a plaintiff need not establish a court previously declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful. Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir. 1997). Additionally, a plaintiff may meet his burden on the clearly established prong by showing the defendant's conduct was "such a far cry from what any reasonable . . . official could have believed was legal that the defendants knew or should have known they were breaking the law." Sorrels, 290 F.3d at 971.

The parties do not dispute that Defendants acted under color of law. The only remaining questions related to counts one and two are whether Defendants violated Plaintiff's clearly established constitutional rights by using excessive force or unreasonably detaining Plaintiff.

### 1. Excessive Force

Courts analyze claims that law enforcement officers have used excessive force in the course of an arrest under the Fourth Amendment to the United States Constitution. Smith v. City of Hemet, 394 F.3d 689, 700 (9th Cir. 2005) (citing Graham v. Connor, 490 U.S. 386 (1989); Ward v. City of San Jose, 967 F.2d 280 (9th Cir. 1992) (as amended)). In

determining the reasonableness of a non-deadly force seizure, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003) (quotations omitted). This entails a three-step analysis. Id. First, the Court must assess "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." Id. Second, the Court must assess "the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Id. The Court may consider other factors, including "the availability of alternative methods of capturing or subduing a suspect." Smith, 394 F.3d at 701.

Third, the Court weighs the gravity of the intrusion against the government's interest to determine whether the amount of force was constitutionally reasonable. Miller, 340 F.3d at 964. The reasonableness inquiry looks at all the relevant objective facts and circumstances that confronted the arresting officers in each particular case, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003) (quotation omitted); Smith, 394 F.3d at 701. Additionally, the reasonableness analysis must consider the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Drummond, 343 F.3d at 1058 (quotation omitted).

Because the reasonableness balancing test "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," courts should grant summary judgment in excessive force cases "sparingly." Id. at 1056. "This is because police misconduct cases almost always turn on a jury's credibility determinations."

10

Id. However, a court may decide reasonableness as a matter of law if, "in resolving all factual disputes in favor of the plaintiff, the officer's force was objectively reasonable under the circumstances." Jackson v. City of Bremerton, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (internal quotation omitted).

Here, genuine issues of fact remain regarding whether Defendants used excessive force against Plaintiff. Viewing the facts in the light most favorable to Plaintiff, Defendants punched Plaintiff twice in the face, pulled her from her car by the arm, and slammed her into a car three times. As to the governmental interests at stake, Defendants stopped Plaintiff because she had emerged from a house connected to narcotics activity, but Defendants had no probable cause to suspect Plaintiff had committed any crime. There is no evidence Plaintiff posed an immediate threat to the safety of the officers or others, and Defendants admit Plaintiff did not resist the officers. While Defendants assert they thought Plaintiff might be attempting to flee when she got back into her vehicle, she did not engage in actual flight from the officers. Balancing the amount of force used against the governmental interests, Defendants punched Plaintiff twice and slammed her into a truck three times even though Defendants lacked probable cause that she had committed any crime, had no evidence that she was armed, and she was not resisting the officers. A reasonable jury could find Defendants used excessive force under the circumstances.

Defendants acknowledge Plaintiff's version of events, to which she has testified under oath, differs from theirs, but Defendants suggest the Court should disregard Plaintiff's version as lacking in credibility. However, the Court does not make credibility determinations at the summary judgment stage. Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1036 (9th Cir. 2005). Further, Defendants are not entitled to qualified immunity because a reasonable officer would know punching Plaintiff twice and slamming her into a car three times when she was not resisting would be unreasonable. See, e.g., Davis v. City of Las Vegas, 478 F.3d 1048, 1054-55 (9th Cir. 2007); Lolli v. Cnty. of

1  Orange, 351 F.3d 410, 416 (9th Cir. 2003).  The Court therefore will deny Defendants'

2  Motion for Summary Judgment on Plaintiff's excessive force claim.

3            2.  Unreasonable Detention

4        Police officers may make "limited intrusions on an individual's personal security

5  based on less than probable cause."  Michigan v. Summers, 452 U.S. 692, 698 (1981).  An

6  officer briefly may detain a suspect to maintain the status quo while investigating criminal

7  activity.  Id. (citing Adams v. Williams, 407 U.S. 143 (1972)).  Such detentions may be

8  made on less than probable cause, "so long as police have an articulable basis for suspecting

9  criminal activity."  Id. at 699.

10        To determine whether a seizure is permissible on less than probable cause, "it is

11  necessary to examine both the character of the official intrusion and its justification."  Id. at

12  701.  The Court uses the objective reasonableness test of the Fourth Amendment to

13  determine whether the seizure was unreasonable.  Graham v. Connor, 490 U.S. 386, 395

14  (1989).  Under this test, the Court balances "the nature and quality of the intrusion on the

15  individual's Fourth Amendment interests against the countervailing governmental interests

16  at stake."  United States v. Enslin, 327 F.3d 788, 796 (9th Cir. 2003) (quotation omitted).

17  Among the factors to consider are the severity of the crime at issue, whether the suspect

18  posed an immediate threat to safety, and whether the suspect actively resisted arrest or fled.

19  Graham, 490 U.S. at 396.  The inquiry is fact specific, based on a totality of the

20  circumstances.  United States v. Turvin, 517 F.3d 1097, 1101 (9th Cir. 2008).

21        An investigative detention "must be temporary and last no longer than is

22  necessary to effectuate the purpose of the stop."  Florida v. Royer, 460 U.S. 491, 500

23  (1983).  Additionally, "the investigative methods employed should be the least intrusive

24  means reasonably available to verify or dispel the officer's suspicion in a short period of

25  time."  Id.; see also United States v. Sharpe, 470 U.S. 675, 686 (1985) ("In assessing

26  whether a detention is too long in duration to be justified as an investigative stop, we

12

1   consider it appropriate to examine whether the police diligently pursued a means of

2   investigation that was likely to confirm or dispel their suspicions quickly, during which

3   time it was necessary to detain the defendant."). Consequently, to determine whether a

4   seizure is unreasonable, the Court considers both "whether the officer's action was justified

5   at its inception, and whether it was reasonably related in scope to the circumstances which

6   justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 19-20 (1968). The

7   government bears the burden of showing that "the seizure it seeks to justify on the basis of a

8   reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions

9   of an investigative seizure." Royer, 460 U.S. at 500.

10      Here, viewing the facts in the light most favorable to Plaintiff, genuine issues of

11   fact remain as to whether Defendants unreasonably detained Plaintiff. Plaintiff does not

12   assert the stop was unjustified at its inception, but Defendants have failed to show no issue

13   of fact remains that the duration and manner of the detention were reasonable. Defendants

14   stopped Plaintiff because she had emerged from the house where suspected narcotics

15   activity had taken place. Two other vehicles previously had left the house, one containing

16   3,000 ecstasy tablets and the other refusing to stop. Defendants explained that they were

17   concerned that one of the occupants of those vehicles may have called the residence and

18   advised someone there to remove any contraband. (Defs.' MSJ, Ex. B at 24.)

19      However, a stop must last no longer than is necessary to effectuate the purpose of

20   the stop. Defendants assert as justification for the stop that they suspected Plaintiff may be

21   spiriting away contraband. Defendants held Plaintiff for two or three hours while they

22   searched Plaintiff's vehicle. Defendants found no evidence of contraband and no evidence

23   that Plaintiff was connected to narcotics trafficking or the Azure Sky residence other than

24   that she had been inside the house. Defendants had no information from surveillance, a

25   confidential informant, or any other source that Plaintiff was connected to the suspected

26   narcotics activity at the residence. Once Defendants determined Plaintiff had not removed

1    contraband from the house as they suspected, and Defendants had no other information to

2    support a reasonable suspicion that Plaintiff was engaged in criminal activity, Defendants

3    nevertheless moved her from the location of the traffic stop to the Azure Sky residence and

4    detained her there for approximately two more hours.  It is unclear from the record how

5    long, if at all, Plaintiff was detained after Defendants determined that Plaintiff had no

6    connection to the residence or the narcotics activity.  Defendants detained Plaintiff in

7    handcuffs the entire time, even though she was unarmed, had not resisted the officers, and

8    requested the handcuffs be adjusted for her comfort.[2]  A reasonable jury could find

9    Defendants detained Plaintiff for an unreasonable amount of time and in an unreasonable

10   manner.

11           Further, Defendants are not entitled to qualified immunity on this claim because a

12   reasonable officer would know he could detain a person based on reasonable suspicion only

13   so long as necessary to effectuate the purpose of the stop, and the use of handcuffs during

14   the detention must be reasonable.  See, e.g., Royer, 460 U.S. at 500; Meredith v. Erath, 342

15   F.3d 1057, 1062-63 (9th Cir. 2003).  The Court therefore will deny Defendants' Motion for

16   Summary Judgment on Plaintiff's unreasonable detention claim.

17           **B. Count Three - Violation of Constitutional Rights - Municipal Liability**

18           A municipal entity may be liable under § 1983 "only where the municipality

19   itself causes the constitutional violation through execution of a government's policy or

20   custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

21   to represent official policy."  Ulrich v. City & Cnty. of S.F., 308 F.3d 968, 984 (9th Cir.

22   2002) (quotation omitted).  Additionally, claims "against a governmental officer in his

23   official capacity is equivalent to a suit against the governmental entity itself," and thus

24   governmental officers "are liable in their official capacities only if policy or custom played

25

26           [2] Defendants contend they adjusted the handcuffs for Plaintiff's comfort, but the Court must
     accept Plaintiff's version as true.

                                                14

1   a part in the violation of federal law." Gomez v. Vernon, 255 F.3d 1118, 1126-27 (9th Cir.

2   2001). A plaintiff may prove a municipal policy was the moving force behind a

3   constitutional violation in three ways: (1) the municipality adopted an express policy; (2) a

4   municipal employee commits a constitutional violation pursuant to the municipality's

5   longstanding practice or custom; or (3) the person causing the violation has final

6   policymaking authority.  Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003).

7         Plaintiff does not argue and has presented no evidence that an express policy of

8   Defendant City was the moving force behind the alleged constitutional violations.  Plaintiff

9   presents no evidence that NLVPD had a custom or practice of violating the rights of

10  persons they suspected of fleeing or that NLVPD has a custom or practice of not

11  investigating allegations against its officers.  Plaintiff presents no evidence of any incident

12  beyond the one in which she was involved.  McDade v. West, 223 F.3d 1135, 1141 (9th Cir.

13  2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based

14  solely on a single occurrence of unconstitutional action by a non-policymaking

15  employee.").

16        As to action by a final policymaker, a municipality "can be liable for an isolated

17  constitutional violation if the final policymaker 'ratified' a subordinate's actions." Christie

18  v. Iopa, 176 F.3d 1231, 1238 (9th Cir. 1999).  To establish ratification, the plaintiff must

19  prove a final policymaker knew of the alleged violation and approved of his or her

20  subordinate's act.  Id. at 1239.  Ratification generally is a fact question for the jury.  Id. at

21  1238-39.

22        Plaintiff has failed to raise a genuine issue of fact that a final policymaker ratified

23  the officers' conduct.  Plaintiff has not identified who Plaintiff contends is a final

24  policymaker.  Further, Plaintiff has presented no evidence or argument to establish that

25  individual is a final policymaker, and has presented no evidence or argument that individual

26  knew of and approved of Defendants' actions.  The Court therefore will grant Defendants'

15

1   Motion for Summary Judgment as to Plaintiff's municipal liability claims against Defendant

2   City of North Las Vegas and Defendants in their official capacities.

3   **C. State Law Claims**

4   1. Discretionary Immunity

5   Nevada Revised Statute § 41.032 sets forth exceptions to Nevada's general

6   waiver of sovereign immunity. Pursuant to § 41.032(2), no action may be brought against a

7   state officer or employee or any state agency or political subdivision that is "[b]ased upon

8   the exercise or performance or the failure to exercise or perform a discretionary function or

9   duty on the part of the State or any of its agencies or political subdivisions or of any officer,

10  employee or immune contractor of any of these, whether or not the discretion involved is

11  abused." To determine whether immunity for a discretionary act applies, Nevada utilizes a

12  two-part test. First, an act is entitled to discretionary immunity if the decision involved an

13  element of individual judgment or choice. Martinez v. Maruszczak, 168 P.3d 720, 729

14  (Nev. 2007). Second, the judgment must be "of the kind that the discretionary function

15  exception was designed to shield," which includes actions "based on considerations of

16  social, economic, or political policy." Id. at 728-29 (quotations omitted).

17  Defendants' decisions regarding the amount of force necessary under the

18  circumstances necessarily are discretionary as the decisions involve elements of individual

19  judgment and choice. Evaluating how much force is necessary at any given moment

20  involves examining the totality of the circumstances and making moment-to-moment

21  decisions which may change in a rapidly evolving situation. Defendants' decisions

22  therefore were discretionary in nature.

23  However, the Court concludes Defendants' conduct does not fall under the

24  second prong of the test because Defendants' decisions regarding the amount of force to use

25  are not the kind of decisions the discretionary function exception was designed to shield.

26  Evaluating whether police officers used excessive force in any given situation does not

16

involve judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy. The officers' obligations in this regard are grounded in the United States and Nevada Constitutions, not policy decisions from the legislative or executive branches. What level of force to use is not an integral part of governmental policy-making or planning. Imposing liability on officers who exceed the permissible use of force will not jeopardize the quality of the governmental process. Further, declining to apply the exception does not usurp the legislative or executive branch's power or responsibility. No branch of the government has the legitimate power to violate the Fourth Amendment of the United States Constitution. Defendants' conduct therefore does not fall within § 41.032 and Defendants are not entitled to discretionary immunity on Plaintiff's state law claim for battery. Because Plaintiff's state law intentional infliction of emotional distress claim is based on the alleged unreasonable use of force, Defendants likewise are not entitled to discretionary immunity on that claim.

### 2.  Battery

Law enforcement officers "are privileged to use that amount of force which reasonably appears necessary, and are liable for battery to the extent they use more force than is reasonably necessary." Ramirez v. City of Reno, 925 F. Supp. 681, 691 (D. Nev. 1996) (applying Nevada law). Consequently, the standard for battery by a police officer under Nevada law is the same as under § 1983. Id. As discussed previously, genuine issues of fact remain regarding whether Defendants used reasonable force. The Court therefore will deny Defendants' Motion for Summary Judgment on Plaintiff's battery claim.

### 3.  Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress under Nevada law, a plaintiff must establish: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation."

Olivero v. Lowe, 995 P.2d 1023, 1025 (Nev. 2000). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). "Liability for emotional distress generally does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Burns v. Mayer, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (quotations omitted). To establish severe emotional distress, the plaintiff must demonstrate that "the stress [is] so severe and of such intensity that no reasonable person could be expected to endure it." Alam v. Reno Hilton Corp., 819 F. Supp. 905, 911 (D. Nev. 1993).

Plaintiff has failed to present evidence or argument that she suffered extreme emotional distress as a result of the incident. The Court therefore will grant Defendants' Motion for Summary Judgment on Plaintiff's intentional infliction of emotional distress claim.

**D. Punitive Damages**

A plaintiff may obtain punitive damages under § 1983 if she proves the defendant acted maliciously, wantonly, or oppressively. Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005). "Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another." Id. (quotation omitted); see also Nev. Rev. Stat. § 42.001(3) (defining malice as "conduct which is intended to injure a person or despicable conduct which is engaged in the conscious disregard of the rights or safety of others").

Although Plaintiff did not respond to Defendants' Motion with respect to punitive damages, the Court will deny Defendants' Motion because Defendants failed to meet their initial burden of establishing no genuine issue of fact remains that Plaintiff is not entitled to punitive damages. See Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993). In support of their Motion, Defendants present Plaintiff's deposition in which she testified that Defendants punched her and slammed her into a car while yelling things such

1    as "This is what a fucking runner gets."  A reasonable jury could conclude from this

2    evidence that Defendants acted with the purpose of injuring Plaintiff as punishment for her

3    perceived attempt to flee.  The Court therefore will deny Defendants' Motion for Summary

4    Judgment as to punitive damages.

5    **III. CONCLUSION**

6            IT IS THEREFORE ORDERED that Defendants' Motion for Summary

7    Judgment (Doc. #67) is hereby GRANTED in part and DENIED in part.  The Motion is

8    granted as to Plaintiff's claims against Defendant City of North Las Vegas and against the

9    individual Defendants in their official capacities.  The Motion also is granted as to

10   Plaintiff's intentional infliction of emotional distress claim with respect to all Defendants.

11   The Motion is denied in all other respects.

12           IT IS FURTHER ORDERED that the parties shall file a proposed joint pretrial

13   order on or before January 31, 2014.

14           IT IS FURTHER ORDERED that this matter is referred to Magistrate Judge

15   Foley for a settlement conference.

16

17   DATED: December 23, 2013

18

19                                                    PHILIP M. PRO

20                                                    United States District Judge

21

22

23

24

25

26

**Freeman, Kristen**

| | |
|---|---|
| **From:** | cmecf@nvd.uscourts.gov |
| **Sent:** | Monday, December 23, 2013 11:19 AM |
| **To:** | cmecfhelpdesk@nvd.uscourts.gov |
| **Subject:** | Activity in Case 2:10-cv-01394-PMP-GWF Huff v. North Las Vegas Police Department et al Order on Motion for Summary Judgment |

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT RESPOND** to this e-mail because the mail box is unattended.
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** There is no charge for viewing opinions.

### United States District Court

### District of Nevada

### Notice of Electronic Filing

The following transaction was entered on 12/23/2013 at 11:18 AM PST and filed on 12/23/2013
**Case Name:** Huff v. North Las Vegas Police Department et al
**Case Number:** 2:10-cv-01394-PMP-GWF
**Filer:**
**Document Number:** 85

**Docket Text:**
**ORDER Granting in Part and Denying in Part [67] Motion for Summary Judgment. Proposed Joint Pretrial Order due by 1/31/2014. This matter is referred to Magistrate Judge Foley for a settlement conference. Signed by Judge Philip M. Pro on 12/23/2013. (Copies have been distributed pursuant to the NEF - SLR)**

**2:10-cv-01394-PMP-GWF Notice has been electronically mailed to:**

Cal J. Potter, III  info@potterlawoffices.com, jenna@potterlawoffices.com

Christopher R Oram  crorambusiness@aol.com

Robert W Freeman, Jr  kfreeman@lbbslaw.com

Chris William Davis (Terminated)  Chris@DavisDigs.com, Chris@DavisLit.com

**2:10-cv-01394-PMP-GWF Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1101333072 [Date=12/23/2013] [FileNumber=6476797-0] [89280c33af28756abfc394727614cf9e7c7a2d811ef750bbac4d2b2b7b212fa312 76ca43ae43d83f09fffa262ab6b0c708f9431554deb9f440b9c583db0154a4]]